FILED '11 MAY 03 15:53 USDC-ORE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

OIL RE-REFINING COMPANY, INC. a )
Washington corporation, )
 )
       Plaintiff, ) Civil No. 11-6042-HO
 )
 )
       v. ) ORDER
 )
PACIFIC RECYCLING, INC., an Oregon )
corporation, and RODNEY M SCHULTZ, )
individually and in his professional )
capacity, )
 )
       Defendants. )
 )

    Plaintiff Oil Re-Refining Company (ORRCO), brings this action under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) seeking costs incurred in responding to

Polychlorinated Biphenyl (PCB) contamination allegedly resulting from defendant, Pacific Recycling, Inc.'s release of PCBs.[1]

> Specifically, plaintiff alleges:
>
> On October 15, 2009, with the specific direction of employees of Pacific Recycling, an ORRCO employee completed a new Waste Materials Profile Sheet for Pacific Recycling's used oil.... That Waste Materials Profile Sheet was the most current Waste Materials Profile Sheet on March 4, 2010, when, at the specific request of Pacific Recycling, ORRCO picked up approximately 1,000 gallons of used oil from Pacific Recycling's place of business. ORRCO was not notified by Pacific Recycling of any abnormality or nonconformance of the used oil; therefore, ORRCO's employee, Mike Miller, relied on the October 15, 2009, Waste Materials Profile Sheet and specifically stated on the Bill of Lading that the product was "used oils and fuels from Autos, Trucks, equipment & machines." Miller checked the boxes indicating the product was "Used Oil", "Hydraulic Oil", "Machine Lubricating Oil", and "Spent Fuel…Old Fuels." Miller categorized the product as: not corrosive, not reactive, not toxic, not mixed with hazardous waste, and as having a flash point over 140 degrees Fahrenheit. The Bill of Lading also provides that the used oil does "not contain any contaminants including…PCBs at concentrations greater than 2 PPM (or 50 PPM with Analytical), or any other material classified as hazardous waste…."

Amended Complaint (#6) at p. 5.

Plaintiff alleges it conducted sampling tests of its truck and tank before loading the 1,000 gallons of defendants' oil on March 4, 2010, and found no contamination. Plaintiff did not test the oil itself. Subsequent testing established significant PCB contamination at plaintiff's Goshen, Oregon facility. Plaintiff alleges that it eliminated other possible sources of the

---

[1] Plaintiff also brings claims for breach of contract, negligence, negligent misrepresentation, breach of express warranty, strict liability, and public/private nuisance.

contamination and that subsequent testing demonstrated PCBs, with the same Areclor 1260, had been found at Pacific Recycling.

Defendants now move to dismiss the CERCLA claim contending the claim fails because there has been no release or threat of release of PCBs into the environment. Defendant moves to dismiss the remaining state law claims for lack of jurisdiction. Particularly, defendants argue that the complaint does not allege any release, but only that all PCBs were contained at plaintiff's storage facility.

CERCLA subjects those, among others, who arrange for (and those that accept responsibility for) disposal of hazardous substances to liability for "a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance." 42 U.S.C. § 9607(a)(3 and 4).

> The term "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)....

42 U.S.C. § 9601(22).

> The term "environment" means (A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States under the Magnuson-Stevens Fishery Conservation and Management Act [16 U.S.C.A. § 1801 et seq.], and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States.

42 U.S.C. § 9601(8).

Defendants contend that, according to the complaint, the only things exposed to PCBs were plaintiff's storage facility and equipment, tanks, and trucks located there. Defendant cites asbestos cases, in support of its position, in which the Ninth Circuit has stated:

> The cases upon which Stevens Creek and the EPA rely concern the disposal or dumping of hazardous substances as waste, and not the removal of asbestos or any other building material from a commercial building.[footnote omitted] Even those cases which do involve asbestos relate to its disposal as waste rather than its use as a building material, [footnote omitted] and no federal court which has considered the placement of asbestos as part of the structure of a building has concluded that it falls within the scope of Section 107(a).
> ....
> Other courts considering this language have concluded that the "environment" referred to in the statute "includes the atmosphere, external to the building," but not the air within a building.
> ....
> There is no question that the asbestos materials in this case were built into the structure, not placed "into or on any land or water." Finally, there is no indication that materials containing asbestos installed as part of the structure of a building, as here, are such that asbestos fibers "may enter the environment or be emitted into the air." Even when action is taken that makes the asbestos friable, the resulting hazard is within the building.

3550 Stevens Creek Assoc's v. Barclay's Bank of California, 915 F.2d 1355, 1359-61 (9th Cir. 1990).

Defendants also cite a D.C. Circuit case in which that court noted, in invalidating an EPA rule:

> In the preamble to the final rule, the EPA interprets CERCLA to require notification whenever a

4 - ORDER

>hazardous substance is placed into an "unenclosed containment structure." ... The EPA defines an unenclosed containment structure as "any surface impoundment, lagoon, tank, or other holding device that has an open side with the contained materials directly exposed to the ambient environment." ... According to this interpretation, therefore, "the placement of an RQ of a hazardous substance in an unenclosed structure would constitute a 'release' regardless of whether an RQ of the substance actually volatizes into the air or migrates into surrounding water or soil." ...
>    The EPA's interpretation of CERCLA's reporting requirement cannot be reconciled with CERCLA's express terms. Rather than defining a release as the movement of a substance from a facility into the environment (as does CERCLA), the EPA defines a release as the placement of a substance into a facility that is exposed to the environment. For the EPA's interpretation to come within CERCLA's meaning, the exposure of a substance to the environment must be equivalent to the release of that substance into the environment. But this is not so. A simple example exposes the flaw in the EPA's analysis: a company could place a non-volatile substance into an open-air storage container and the consequences of the open-air storage would be no different from those that would occur if the company had placed the substance to a closed container. Nonetheless, under the EPA's interpretation, the company would have to report the transfer of the substance to the container notwithstanding the non-volatile substance's inability to escape into the air.[2]

Fertilizer Institute v. U.S.E.P.A., 935 F.2d 1303, 1309-1310 (D.C. Cir. 1991).

With respect to "threatened" releases, defendants cite Powell Duffryn Terminals, Inc. v. CJR Processing, Inc., 808 F.Supp. 652 (N.D.Ill. 1992). The plaintiff in that case alleged

>[t]here was a threatened release of the liquid solution into the environment in that it was not properly labeled or identified as hazardous. Powell Duffryn does not

---

[2]The reporting requirements at issue did not require reports of "threatened" releases.

5 - ORDER

> treat, store or dispose of hazardous substances and is not equipped to do so, and, until mid-November 1991, the liquid solution was not handled or labeled in a manner appropriate for hazardous substances.

Id. at 654. The Court determined that the

> complaint does not sufficiently allege a CERCLA claim. Nowhere is there an allegation that the liquid solution stored in the tanks was capable of escaping into the environment. Powell Duffryn has not alleged that the liquid was contained in improper or unsuitable containers or that the storage tanks were corroded, cracked, unsealed, unenclosed, or otherwise exposing the environment to the probability that the mixture would escape.

Id. at 654-55.

Plaintiff acknowledges that its facility and tanks are not corroding, but contends that because it is not licensed to store or have expertise in the storage of PCBs, that there is a threat of release. Even if such an allegation had been made in the complaint, it is no different than the allegation rejected by the Powell Duffryn Terminals court. While a complaint need not contain a specific allegation of the manner in which a threatened release has occurred, Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1153 (9th Cir.1989), it must allege a threat. Licensing and expertise issues are not enough. C.f., State of N.Y. v. Shore Realty Corp., 759 F.2d 1032, 1045 (2d Cir. 1985) ("We hold that the leaking tanks and pipelines, the continuing leaching and seepage from the earlier spills, and the leaking drums all constitute "releases." 42 U.S.C. § 9601(22). Moreover, the corroding and deteriorating tanks, Shore's lack of expertise in handling

6 - ORDER

hazardous waste, and even the failure to license the facility, amount to a threat of release.").

The current complaint fails to allege any release or threat of release.[3] Even the dicta in <u>Ascon Properties</u> requires such. See <u>Ascon Properties</u> 866 F.2d 1156:

> The district judge also pointed out that Ascon had failed to allege a "release" or "threat of release" from the property, but instead appeared to be alleging a release onto the site. After making this criticism, the judge instructed Ascon to "more specifically allege the release or threatened release of the hazardous wastes into the environment." Taken in context, we read this directive to mean that Ascon should allege a release or threatened release from the property.

Plaintiff also notes that without knowledge of the PCB contamination, it would have processed the used oil into oil that would be burned by customers resulting in PCBs being released and that its discovery, prevented this threatened release. Simply because the contamination was caught before the oil was processed does allow defendant to escape CERCLA liability because the threat is very real given that the oil was specifically transferred to plaintiff for such processing and the clean up is the response to that threat. As noted above, CERCLA liability is imposed for a threatened release which causes the incurrence of response costs. This is enough to survive a motion to dismiss and leave to amend to

---

[3] The complaint comes close with the allegation that defendants "caused the release of a hazardous substance from [its own] facility by disposing (and arranging for disposal [of]) used oil containing extremely high concentrations of PCBs." Amended Complaint (#6) at p. 7. The allegation fails to allege a release into the "environment."

7 - ORDER

include such allegations is granted.[4]  Accordingly, the motion to dismiss is granted without prejudice to amend.

DATED this 3rd day of May, 2011.

*[signature]*
United States District Judge

---

[4]Plaintiff also notes that at least small spills into the ground and water are likely during the cleanup and possibly already have occurred during transfer to storage tanks. This allegation may also be enough to properly allege an actual release.

8 - ORDER