IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| OIL RE-REFINING COMPANY, INC. a Washington corporation, | ) ) ) |
| Plaintiff, | ) Civil No. 11-6042-HO ) ) |
| v. | ) ORDER ) |
| PACIFIC RECYCLING, INC., an Oregon corporation, and RODNEY M SCHULTZ, individually and in his professional capacity, | ) ) ) ) ) |
| Defendants. | ) ) |

Plaintiff Oil Re-Refining Company (ORRCO), brings this action under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) seeking costs incurred in responding to Polychlorinated Biphenyl (PCB) contamination allegedly resulting

from defendant, Pacific Recycling, Inc.'s release of PCBs.[1] The court granted defendants' motion to dismiss for failure to allege an actual or threatened release of PCBs, but allowed plaintiff an opportunity to amend. Plaintiff filed its second amended complaint on September 26, 2011.

> Plaintiff alleges in its second amended complaint:
>
> On October 15, 2009, with the specific direction of employees of Pacific Recycling, an ORRCO employee completed a Waste Materials Profile Sheet for Pacific Recycling's used oil.... [O]n March 4, 2010, ... at the specific request of Pacific Recycling, ORRCO picked up approximately 1,000 gallons of used oil from Pacific Recycling's place of business. ORRCO was not notified by Pacific Recycling ... of any abnormality or nonconformance of the used oil; therefore, ORRCO's employee, Mike Miller, relied on the Waste Materials Profile Sheet dated October 15, 2009, and specifically stated on the Bill of Lading that the product was "used oils and fuels from Autos, Trucks, equipment & machines." Mr. Miller checked the boxes indicating the product was "Used Oil", "Hydraulic Oil", "Machine Lubricating Oil", and "Spent Fuel...Old Fuels." Pacific Recycling's used oil was ... characterized in the Bill of Lading as: not corrosive, not reactive, not toxic, not mixed with hazardous waste, and as having a flash point over 140 degrees Fahrenheit. The Bill of Lading also provides that the used oil does "not contain any contaminants including...PCBs at concentrations greater than 2 PPM (or 50 PPM with Analytical), or any other material classified as hazardous waste...."
>
> Seconded Amended Complaint (#20) at pp. 5-6.

---

[1] Plaintiff also brings claims for breach of contract, negligence, negligent misrepresentation, breach of express warranty, strict liability, and public/private nuisance. In addition, plaintiff has added, in its second amended complaint, three new citizens' suits under the Toxic Substances Control Act (TSCA), the Resource Conservation and Recovery Act (RCRA) and CERCLA.

2 - ORDER

Plaintiff alleges it conducted sampling tests of its truck and tank before loading the 1,000 gallons of defendants' oil on March 4, 2010, and found no contamination. Plaintiff transported the load to its storage facility in Goshen, Oregon.

Plaintiff asserts it took no special precautions to prevent spills, leaks or emissions and spillage onto the soil, or onto Miller's clothing. Plaintiff asserts that emissions into the air occurred during loading and unloading. Plaintiff alleges that subsequent testing established extensive PCBs at the Goshen facility. Plaintiff took action to control and mitigate PCB contamination including locking down the tank containing the contaminated load on March 7, 2010, and locking down the entire facility on March 10, 2010.

Plaintiff alleges that the only oil at its facility in which PCBs were detected was defendant's oil. Plaintiff further alleges that the EPA discovered extremely high concentrations of PCBs at defendant's facility and that those PCBs were the same Aroclor (Aroclor 1260) found in plaintiff's truck which had been used to haul defendant's oil and in plaintiff's tank used to store that oil.

Plaintiff maintains it has incurred substantial expense to keep its Goshen facility locked down and in segregating large amounts of allegedly contaminated oil. Plaintiff further alleges that a leak had been detected in a fitting pipe from the tank

3 - ORDER

containing the contaminated oil and that approximately 10 gallons of PCB contaminated used oil was released on the ground and emitted into the air. Plaintiff asserts that additional spills or other releases of PCBs will be unavoidable.

Defendant again moves to dismiss. The court previously dismissed the complaint because plaintiff fail to allege an actual or threatened release, into the environment, of PCBs. However, the court gave leave to amend to include these allegations:

> Plaintiff also notes that without knowledge of the PCB contamination, it would have processed the used oil into oil that would be burned by customers resulting in PCBs being released and that its discovery, prevented this threatened release. Simply because the contamination was caught before the oil was processed does allow defendant to escape CERCLA liability because the threat is very real given that the oil was specifically transferred to plaintiff for such processing and the clean up is the response to that threat. As noted above, CERCLA liability is imposed for a threatened release which causes the incurrence of response costs.

Order dated May 3, 2011 (#15) at pp. 7-8.

The second amended complaint now alleges two incidents of releases and alleges further releases "are unavoidable."

Although this is not a motion for summary judgment, defendants contend that plaintiff's allegations do not have good faith support, citing the Deposition of Michael Miller (attached to Declaration of Christopher J. Kayser (#40)) at pp. 37, 54, and the Deposition of Wilmer Lee Briggs attached to Declaration of Christopher J. Kayser (#40)) at pp. 122-23. Under Fed. R. civ. P. 12(d), the court could treat the motion as one for summary

4 - ORDER

judgment, but defendant raises these factual matters in its reply and plaintiff has not had an opportunity to present pertinent matters. However, defendants raise other deficiencies appropriately addressed in a motion to dismiss.

A.   Citizens' Suits under the TSCA, RCRA and CERCLA

Citizens' suits under these acts are confined to injunctive relief. See, e.g., Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs, 426 F.3d 241, 248, n. 5 (3d Cir. 2005) (the only citizens' suits allowed under the TSCA are to enjoin violations of the act, not for money damages). The second amended complaint seeks $800,000 in damages, but does specifically seek injunctive relief. Plaintiff agrees that "the prime remedy available in citizens' suits under [the TSCA, RCRA, and CERCLA] is to enjoin future violations of the respective acts. However, plaintiff argues that defendants have fair notice of the remedies, apparently, because defendants acknowledge that the only remedies available are injunctive by raising the issue in the motion to dismiss. The second amended complaint provides no notice of the pursuit of injunctive relief and only outlines monetary damages for cleanup, storage, damages to facilities, and business losses. The motion to dismiss the citizens' suits claims is granted.[2]

---

[2]Plaintiff fails to identify any cognizable injunctive remedy in its response to the motion--it only notes "enjoining future violations," and "instructing defendants to undertake cleanup
(continued...)


## B. CERCLA Response Costs Claim

As the court previously noted, liability is premised on "a release, or a threatened release, which causes the incurrence of response costs, of a hazardous substance." 42 U.S.C. § 9607(a)(3 and 4). Plaintiff essentially pleads two new PCB release allegations in response to the previous dismissal of this case. First, plaintiff alleges Miller took no special precautions to prevent spills, leaks or emissions when loading and unloading the allegedly contaminated oil and spillage onto the soil, onto Miller's clothing, and emissions into the air occurred. Second, plaintiff alleges a leak has been detected in a fitting pipe from the tank containing the contaminated oil and that approximately 10 gallons of PCB contaminated used oil was released on the ground and emitted into the air. Plaintiff also alleges that additional spills will be unavoidable.

> The term "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)....

---

²(...continued)
efforts." However, the complaint makes clear that the remedy is reimbursement for cleanup efforts as there are no allegations of ongoing violations on the part of defendants--the allegedly contaminated oil is stored at plaintiff's facility. Defendants also argue that a citizen's suit under CERCLA should be dismissed because there has not been a knowing release (by defendants) of hazardous substances. Plaintiff argues, without authority, that knowledge is not necessary. Plaintiff must show that defendants released a reportable quantity of PCBs. See Sierra Club, Inc. v. Tyson Foods, Inc., 299 F.supp2d 693, 707 (W.D.Ky. 2003).

6 - ORDER

42 U.S.C. § 9601(22).

> The term "environment" means (A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States under the Magnuson-Stevens Fishery Conservation and Management Act [16 U.S.C.A. § 1801 et seq.], and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States.

42 U.S.C. § 9601(8).

Defendant argues that the allegations are deficient because the $800,000 in costs purportedly incurred are not related to either of the alleged actual releases and the actual remediation efforts allegedly undertaken and because the costs plaintiff has incurred are not the type recoverable under CERCLA.

Defendants assert that the second amended complaint does not identify any costs associated with the actual releases. The court already determined that PCB exposure to plaintiff's storage facilities is not itself a release into the environment. The second amended complaint alleges costs associated with storage, but not cleanup after Miller's spill or the leaking pipe (assuming the leaking pipe actually contaminated the ambient air and ground beyond the facility). However, plaintiff asserts that because it has now alleged the leak, it has sufficiently pleaded a "threatened release" given that it is not licensed to store PCBs or have expertise in its handling.

While plaintiff may have barely met the pleading requirement regarding a threatened release, it is still necessary to plead relation of the costs expended and the actual effort to cleanup the contamination. No costs associated with cleanup of the two spills have been alleged (but presumably fixing the leaking pipe and removing the spillage resulted in a cost). Plaintiff does allege that defendants are responsible for expenses related to sampling and testing, decontamination of equipment, and long-term storage as well as eventual disposal. Presumably these costs are associated with remediation of the alleged threatened release.

Recoverable remedial costs include storage, confinement, repair of leaking containers, and monitoring. 42 U.S.C. § 9601(24). However, plaintiff is required to plead a remedial plan consistent with the National Contingency Plan (NCP):

> Under CERCLA, Moses Lake carries the burden of establishing that the release or threatened release of a hazardous substance has caused it to incur response costs that were "necessary" and "consistent" with the National Contingency Plan [NCP]. The NCP is a plan promulgated by the EPA that delineates specific steps private parties must take in selecting a remedial action plan and cleaning up hazardous waste. 40 C.F.R. Part 300. It is "designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment." Washington State Dep't. Of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 800 (9th Cir. 1995). **Private parties must plead and prove consistency with NCP, while a government entity's costs are presumed to be consistent with the NCP.** Carson Harbor Village, 287 F.Supp.2d at 1152 n. 15. **Private action is "consistent with the NCP" if the action, evaluated as a whole, is in "substantial compliance" with certain procedural requirements, and results in a "CERCLA-quality cleanup."** 40 C.F.R. § 300.700(c)(3)(I). The NCP's

> procedural requirements include, among other things, that the party seeking response costs conduct a remedial site investigation (40 C.F.R. § 300.700(c)(5)(vii)), prepare a remedial investigation and feasibility study ("RI/FS")(40 C.F.R. 300.700(c)(5)(viii)), and provide an opportunity for public comment (40 C.F.R. 300.700(c)(6)). Id. at 1152.

City of Moses Lake v. U.S., 458 F.Supp.2d 1198, 1236 (E.D.Wa. 2006) (emphasis added).

Plaintiff contends that, at this stage, it has only taken "removal" actions and not remedial actions and thus need not comply with the above requirements. However, as noted, most, if not all, of the alleged damages are associated with an alleged threatened release. Moreover, even removal actions require removal site evaluation and review of current site conditions, and consideration of several factors including potential exposure to people, potential contamination to drinking water supplies, etc. 40 C.F.R. § 300.415(a) and (b). In addition, a party conducting removal actions must notify affected citizens and provide for public comment. 40 C.F.R. § 300.415(n). Plaintiff has not pleaded such compliance.

Plaintiff suggests that liability and damages should be bifurcated and, therefore, pleading compliance with the NCP can be avoided at this time. See City of Moses Lake, 458 F.Supp.2d at 1236:

> Moses Lake contends NCP compliance is a damages issue, not a liability issue, citing Cadillac Fairview/California, Inc. v. Dow Chemical Co., 840 F.2d 691, 695 (9th Cir.1988) ("the question whether a response

9 - ORDER

action is necessary and consistent with the criteria set forth in the contingency plan is a factual one to be determined at the damages stage of a section 107(a) action, rather than by the mechanism of prior governmental approval") and Mid Valley Bank v. North Valley Bank, 764 F.Supp. 1377, 1389 (E.D.Cal.1991)("[i]n this circuit ... it has been specifically held that a failure to comply with the NCP is not a defense to liability, but goes only to the issue of damages," citing Cadillac Fairview).

The City of Moses Lake court determined, however, that compliance is a liability issue or at least a hybrid issue. Id. Nonetheless, some courts have determined that in certain circumstances, a plaintiff may be entitled to a declaration of liability even prior to establishing consistency with the NCP. See County Line Inv. Co. v. Tinney 933 F.2d 1508, 1512-13 (10th Cir. 1991)(emphasis added):

> Section 107 provides that a person is only liable for private party response costs to the extent that these costs were incurred "consistent with the national contingency plan." See 42 U.S.C. § 9607(a). Proof of response costs incurred "consistent with" the NCP is, therefore, an element of a prima facie private cost recovery action under CERCLA. See, e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc., 889 F.2d 1146, 1150 (1st Cir.1989); Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1152, 1154 (9th Cir.1989); Amland Properties Corp. v. Aluminum Co., 711 F.Supp. 784, 790, 794 (D. N.J.1989); Artesian Water Co. v. New Castle County, 659 F.Supp. 1269, 1291-92 (D.Del.1987), aff'd, 851 F.2d 643 (3rd Cir.1988). Because the New Owners have incurred no costs consistent with the NCP, CERCLA provides them no remedy.
>
> **In holding that consistency with the NCP is an element of a private cost recovery claim, we recognize that there are some circumstances in which a CERCLA plaintiff may be entitled to a declaration of the defendant's liability even though the plaintiff has not yet established that all of its claimed response costs were incurred**

10 - ORDER

**consistent with the NCP.** These include cases, relied upon by the New Owners here, in which the factual record does not permit a determination of consistency with the NCP at the time the motion for summary judgment is filed, see, e.g., United States v. Mottolo, 695 F.Supp. 615, 620 (D.N.H.1988) (partial summary judgment may be used "to adjudicate some, but not all, issues pertaining to liability" and "may be rendered as to liability even if there is a genuine issue as to appropriate damages"); Sunnen Prod. Co. v. Chemtech Indus., Inc., 658 F.Supp. 276, 278 (E.D. Mo.1987), and those in which the plaintiff seeks only a declaration of the defendant's liability for future costs incurred consistent with the NCP.FN9 See, e.g., Southland Corp. v. Ashland Oil, Inc., 696 F.Supp. 994, 999-1000 (D.N.J.1988); T & E Indus., Inc. v. Safety Light Corp., 680 F.Supp. 696, 709 (D.N.J.1988).

Given that some discovery has already taken place, it appears the issue is better resolved at the summary judgment stage. Plaintiff may amend its complaint to make a good faith claim of liability and any damages or an expectation of damages consistent with the NCP. Plaintiff must clearly state damages and to what they are attributed, such as removal or remediation. If plaintiff can do that, then any further alleged deficiencies are best suited for determination at the summary judgment stage. The motion to dismiss is granted with leave to replead within 30 days of the date of this order.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (#26) is granted. Plaintiff may file an amended complaint, within 30 days, curing the deficiencies noted above.

DATED this 17th day of January, 2012.

_____
United States District Judge